Filed 3/13/24  P. v. Knight CA5
Opinion following rehearing

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA KNIGHT,<br><br>    Defendant and Appellant. | F084883<br><br>(Kern Super. Ct. No. BF186054A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Joshua Knight raises several appellate issues after he was sentenced to 860 years to life for horrific sex crimes perpetrated primarily against his young daughter.  We accept the Attorney General's concession that the matter must be remanded for the trial court to orally recite fines and fees imposed on defendant and to prepare an amended abstract of judgment.  We otherwise reject defendant's contentions and affirm.

## BACKGROUND

In an amended information filed May 23, 2022, the Kern County District Attorney charged defendant with 25 counts of oral copulation or sexual penetration of a minor (Pen. Code, § 288.7, subd. (b);[1] counts 1, 5–7, 9, 11, 13, 16–18, 20–21, 25–26, 29–30, 32–36, 41–43), 12 counts of lewd acts upon a child under the age of 14 (§ 288, subd. (a); counts 2–4, 15, 23–24, 28, 31, 37–40),[2] 7 counts of sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a); counts 8, 10, 12, 14, 19, 22, 27, 44), possession of child pornography with a prior conviction (§ 311.11, subd. (b); count 45), possession of ammunition by a felon (§ 30305, subd. (a); count 46), misdemeanor possession of methamphetamine (Health & Safety Code, § 11377, subd. (a); count 47.)  The information further alleged a multiple victim enhancement (§ 667.61, subd. (e)(4)) and aggravating factors under California Rules of Court, rule 4.421(a)(3), (a)(4), (a)(5), (a)(8), (a)(11), (b)(2), (b)(3), (b)(4), (b)(5).

A jury convicted defendant on counts 1 through 45 and 47 but acquitted him on count 46.  The jury also found the multiple victim allegations true.  (§ 667.61.)

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

[2] Counts 38 and 39 initially identified Jane Doe as the victim but was later amended to identify John Doe as the victim.

**First Parole Search**

Then-parole agent Farrah Gamez (Gamez) conducted a parole search of defendant's residence on August 11, 2020.[3] Gamez had received information that led her to bring additional agents and conduct a more thorough search than usual. Defendant was present at the residence with his two children, Jane Doe and John Doe. Jane Doe was born in March 2013 and John Doe in July 2009.

Gamez located three smart phones belonging to defendant. Gamez turned the phones over to the Department of Homeland Security to perform a forensic search.

A forensic analyst with the Department of Homeland Security named Nicholas Daigle (Daigle) performed a forensic analysis of defendant's mobile devices. Daigle created a thumb drive with 33 different photographic and video files taken from defendant's mobile devices. The videos were numbered to correspond to the counts to which they applied. The thumb drive was admitted into evidence as People's exhibit 1. The files in exhibit 1 were contained in an application called Hide It Pro, which is used to hide files.

Daigle provided a description of each video and picture file on the thumb drive. A document containing Daigle's descriptions was admitted as People's exhibit 9.

The first video from exhibit 1 was played for the jury. The video showed defendant orally copulating Jane Doe. After the video played, defense counsel asked for a sidebar. Defense counsel wanted to speak with his client to see if they could offer a stipulation so the remaining videos would not be played to the jury. Defense counsel said defendant was in agreement that they could proceed by using Daigle's report about the

---

[3] Another parole search was conducted on June 26, 2021, on a different residence where defendant had moved. In the top drawer of a nightstand next to the bed in the bedroom, agents found a piece of plastic with an off-white crystalline substance. An analysis indicated the substance was 6.2524 grams of methamphetamine.

contents of the video. The prosecutor indicated she needed some time to ensure she was comfortable with the stipulation.

Eventually the parties entered into a stipulation in front of the jury. The stipulation provided that Daigle's descriptions listed in exhibit 9 "are each an accurate and truthful synopsis of the sexual conduct contained within each individual video file or picture file, and these relate specifically to the files in People's [e]xhibit 1." No further videos were shown to the jury; however, they were available to the jury for viewing since exhibit 1 had been admitted into evidence.[4]

The remaining videos on exhibit 1[5] that were not played for the jury in open court depicted extensive sexual activity between defendant and Jane Doe, including oral copulation of defendant by Jane Doe, oral copulation of Jane Doe by defendant, digital intercourse, vaginal intercourse, masturbation, and Jane Doe stroking defendant's erect penis with her hands. Some videos may have shown defendant engaged in anal intercourse with Jane, but that determination could not be definitively made.

**John Doe**

John Doe was born in July 2009. John had been in special education classes since he started school. John testified he never saw defendant touch Jane's private part.

John Doe was asked if he himself touched Jane's "private part" with his own "private part." John Doe testified that he had done so.

---

[4] Defendant states that only the evidence pertaining to counts 38, 39 and 40 are pertinent to the evidentiary issues he raises on appeal. We will discuss the evidence pertaining to those counts in the "Discussion" of this opinion.

[5] Except for video 38 and video 39-40, which are described below in connection with the appellate contentions to which they pertain.

John Doe was then asked if he video-recorded it, to which he responded, "I don't know." The next question was, "[W]here did you learn to do that?" to which John responded, "Nobody."[6]

## DISCUSSION

### I.      There Was Sufficient Evidence to Support Counts 38, 39, 40

Defendant challenges the sufficiency of the evidence to support counts 38, 39, and 40.

#### A.      *Legal Considerations*

In counts 38 and 39, defendant was convicted of committing lewd acts upon his son, John Doe, a child under the age of 14.  (§ 288, subd. (a).)  In count 40, defendant was convicted of committing lewd acts upon his daughter, Jane Doe, a child under the age of 14.  (§ 288, subd. (a).)

##### 1.      *Crime of Lewd and Lascivious Acts Upon a Child Under the Age of 14*

Section 288, subdivision (a) applies to a person who "willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, a child who is under the age of 14, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  (§ 288, subd. (a).)

The concept of a "constructive" touching "permits conviction under section 288 where, at the defendant's direction and for a lewd purpose, a young child touched himself

---

[6] Defendant describes this testimony as John saying he did not learn to touch private parts from anyone.  However, the question was actually a follow up to whether John Doe was the one who video-recorded the incident.  Evaluating this testimony in the light most favorable to the judgment, we infer John Doe was saying he did not learn how to record video from anyone, not that he did not learn how to make sexual contact with another person from anyone.

or touched a third person." (*People v. Scott* (1994) 9 Cal.4th 331, 343; see also *People v. Mickle* (1991) 54 Cal.3d 140, 176.)

### 2.    *Substantial Evidence Review*

" ' "In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶]  The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations.  [Citation.]  '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.'  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117–1118.)

### B.    *Background Facts*

### 1.    **Video 38**

Exhibit 9 describes video 38 as follows:

> "The video appears to be of [John Doe] masturbating.  The male juvenile is standing on a textured tile floor and can only be seen from the upper waist down."

The video was 12 seconds long and appeared to have been created November 10, 2020, at 4:00 p.m.  It had an abnormal file path, which Daigle believed was a result of using the Hide it Pro application.

### 2. Video 39-40

Exhibit 9 describes video 39-40 as follows:

> "The video begins with [Jane Doe] lying down on a bed wearing only a sweatshirt and underwear. At approximately 2 seconds into the video, a male juvenile (likely [John Doe]) can be seen sliding [Jane Doe's] underwear to the side exposing her vagina. At approximately 25 seconds into the video, [John Doe] can be seen with his sweatpants pulled down and his erect penis exposed. [Jane Doe] can be heard saying, '[F**]k me baby, f[**]k me … f[**]k me hard' during the video. [John Doe] appears to be positioning himself to engage in vaginal intercourse with [Jane Doe]."

The video was 56 seconds long and appeared to have been produced on November 11, 2020, at 10:43 a.m. The video had an abnormal file path, which indicated to Daigle that the Hide it Pro application had been used.

The parties agree John Doe recorded these videos.

### C. *Analysis*

Defendant contends the videos were insufficient to support convictions for lewd and lascivious acts. He posits that there was no evidence he instructed or instigated John Doe to masturbate or molest Jane on video. To the contrary, we conclude there was evidence that raised an inference defendant was involved.

First, the videos were on defendant's phone.

Second, most 11-year-old children do not record themselves masturbating and molesting their sister. This raises an inference that he performed these acts on camera at the behest of another. Furthermore, there was evidence raising a strong inference that person would have been defendant. Other videos showed defendant had previously recorded himself masturbating and molesting the same victim, Jane Doe. Moreover, those videos were hidden with the Hide it Pro application – the same application used for videos 38 and 39-40. Taken together, these facts raise convincing inferences that John Doe committed these acts on camera at the behest of another person, and that the person was defendant.

7.

Consequently, there was sufficient evidence to support a conviction under section 288 pursuant to a " 'constructive' touching" theory.  (See *People v. Scott*, *supra*, 9 Cal.4th at p. 343; see also *People v. Mickle*, *supra*, 54 Cal.3d at p. 176.)

## II.    The Pleading Gave Sufficient Notice of a Potential Sentencing Under One Strike Law

Defendant next contends that his 25 years to life terms on counts 2, 3, 4, 15, 23, 24, 28, 31, 37, 38, 39, and 40 must be reduced to 15 years to life terms.  He argues that the information's citations to subdivisions (c) and (e)(4) of section 667.61 were insufficient to put him on notice that he could be sentenced under subdivision (j)(2) of that section.

### A.    *Law*

### One Strike Law

Section 667.61, often referred to as the "One Strike" law, provides for mandatory prison sentences of 15 or 25 years to life for certain sex offenses committed under certain circumstances.  (§ 667.61.)

Section 667.61, subdivision (c), lists the sex crimes to which the statute applies – i.e., multiple types of rape, multiple types of lewd or lascivious acts, sexual penetration, sodomy, oral copulation, and continuous sexual abuse of a child.

Section 667.61, subdivisions (d) and (e), set forth two categories of "circumstances" under which these crimes could be committed.  For example, the circumstance of defendant inflicting great bodily injury during the offense or committing the offense against multiple victims.

The One Strike Law provides the defendant "shall" receive a sentence of 25 years to life in any of the following situations: (1) one or more of the circumstances under section 667.61, subdivision (d) applies (§ 667.61, subd. (a)); (2) two or more of the circumstances listed in subdivision (e) apply (§ 667.61, subd. (a)); or (3) one of the

circumstances listed in subdivision (e) applies and the offense was committed upon a child under 14 years of age (§ 667.61, subd. (j)(2).)

The defendant "shall" receive a sentence of 15 years to life if only one circumstance in subdivision (e) applies (§ 667.61, subd. (b)), and the offense was *not* committed against a child under the age of 14 (see § 667.61, subd.(j)(2).)[7]

### Pleading

"It is a fundamental rule of due process that a defendant must be given fair notice of any alleged crimes in order to mount a possible defense. (U.S. Const., 6th Amend. ['the accused shall enjoy the right … to be informed of the nature and cause of the accusation']; U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) A defendant's right to fair notice applies equally to 'allegations that will be invoked to increase the punishment for his or her crimes.' " (*In re Vaquera* (2019) 39 Cal.App.5th 233, 238–239, review granted Nov. 26, 2019, S258376.)

In California, an "accusatory pleading does not have to state the number of the statute, it may be 'in any words sufficient to give the accused notice of the offense of which he is accused.' (§ 952; [citation].)" (*In re Vaquera*, *supra*, 39 Cal.App.5th at p. 239.) "Similarly, the number of an enhancement statute does not have to be alleged, so long as the accusatory pleading apprises the defendant of the potential for the enhanced penalty and alleges every fact and circumstance necessary to establish its applicability." (*Ibid.*)

The One Strike law has a specific provision concerning pleading. Its subdivision (o) provides: "The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section …." (§ 667.61, subd. (o).)

---

[7] The One Strike law also provides for a sentence of life without the possibility of parole in certain situations not present here. (See § 667.61, subds. (j)(1) & (l).)

### Additional Facts

In the present case, defendant was charged with 12 counts of lewd and lascivious act upon a child under the age of 14 years (counts 2–4, 15, 23–24, 28, 31, 37–40), which is a qualifying crime under section 667.61, subdivision (c). In those counts, the information alleged the victims were each a child under the age of 14 years.

As to the One Strike enhancements, the information alleged:

> "It is further alleged that in the commission of the crime … the defendant has been convicted in the present case or cases of committing an offense specified in section 667.61(c) of the Penal Code against more than one victim, within the meaning of Penal Code section 667.61(e)(4)."

The jury convicted defendant on the 12 counts of lewd and lascivious acts.

The jury also found true the multiple victim enhancements to those counts. Those findings were worded as follows:

> "We, the Jury, empaneled to try the above entitled case, find it to be true as to [defendant], that the defendant has been convicted in the present case or case [*sic*] of committing an offense specified in section 667.61(c) of the Penal Code against more than one victim, within the meaning of Penal Code section 667.61(e)(4), as alleged in the Information."

### Analysis

Defendant contends the information failed to sufficiently apprise him of the potential for being sentenced under subdivision (j)(2) of section 667.61.

We begin by observing the information alleged every *factual* predicate needed for a 25-year-to-life sentence under section 667.61, subdivision (j)(2) of the One Strike law, even though it did not cite subdivision (j)(2) directly.

First, it alleged that defendant committed 12 counts of lewd and lascivious conduct. This crime is listed in section 667.61, subdivision (c) of the One Strike law as a qualifying sex offense. And the information expressly cited subdivision (c) to this effect.

Second, the information alleged that defendant committed a qualifying offense against more than one victim. This is one of the circumstances listed in section 667.61,

10.

subdivision (e).  (See § 667.61, subd. (e)(4).)  The information expressly cited to subdivision (e)(4) of the One Strike law.

Finally, the information alleged that the lewd and lascivious conduct crimes were committed against a child under the age of 14 years.

Given these three facts, the One Strike law provides that defendant "shall" be sentenced to 25 years to life.  (§ 667.61, subd. (j)(2).)[8]

As defendant emphasizes, the information did not expressly cite to section 667.61, subdivision (j)(2) or subdivision (b).  However, it was not required to, as explained below.

Identifying a specific subdivision of section 667.61 can be sufficient to provide adequate notice, but it is not required.  (*People v. Mancebo* (2002) 27 Cal.4th 735, 754.) Adequate notice can also be conveyed by a factual description of the qualifying statutory circumstances and a general reference to section 667.61 without any subdivision citations.  (*Ibid*.)  The important factor here is that the information contained all of the *factual* allegations needed to impose sentence under subdivision (j)(2), and the enhancement contained several other citations to the One Strike law.

In sum, we find the combined effect of two factors to be dispositive: (1) the information made amply clear that the prosecution intended to have the One Strike law applied to defendant's case, and (2) all of the facts ultimately used to select which One Strike law sentence would be imposed were alleged in the information.  In light of these

---

[8] Moreover, each of these three facts were ultimately found true by the jury.  The fact that defendant committed the underlying offenses and that those offenses were committed against children under the age of 14 years is reflected in the jury's guilty verdicts on those counts.  (These verdicts necessarily reflect a finding as to the children being under 14 years because that was an element of each of these offenses.)  And the fact that defendant committed qualifying offenses against more than one victim is reflected in the jury's true finding on the enhancement.

two factors, the absence of a direct statutory citation to section 667.61, subdivision (j)(2) does not warrant reversal.

### Section 667.61, Subdivision (o)

Section 667.61, subdivision (o)'s requirement that the information alleged the "circumstance specified in subdivision (d) or (e)" does not alter this conclusion. The exceedingly plain language of that provision requires only one thing: that the information allege one or more circumstances under subdivision (d) or (e). The information here satisfied that requirement in alleging the multiple victim circumstance under subdivision (e).

Section 667.61, subdivision (o) does not speak to pleading the *legal* effect of the circumstance(s) present from subdivision (d) or (e). The *legal* effect of one or more *factual* circumstances in subdivision (d) or (e) is governed by other provisions, such as subdivisions (a), (b) and (j). Subdivision (o) quite reasonably concerns itself with a singular *factual* allegation that must be present in the charging document: the circumstance(s) present from subdivision (d) or (e). The Legislature's choice not to require allegations concerning other aspects of the One Strike law is not one for us to disturb. By declining to require anything more, the Legislature left in effect the standard pleading rules as to all other aspects of the One Strike law, including the principle that specific statutory citations are not necessarily required.

Defendant relies on *People v. Jimenez* (2019) 35 Cal.App.5th 373, where the Court of Appeal ruled differently under similar circumstances. *Jimenez* concluded that because the information cited section 667.61, subdivisions (b) and (e),[9] but not (j), it "only informed [the defendant] he could be sentenced to terms of 15 years to life under … section 667.61, subdivisions (b) and (e) for committing the alleged offenses against multiple victims." (*Jimenez*, at p. 397.) The unstated premise behind this conclusion is

---

[9] The information here cited to subdivisions (c) and (e) but not (b).

12.

that a charging document can only "inform" a defendant of a possible sentence by citing to the specific subdivision under which sentence would be imposed. We disagree with that premise. As noted above, identifying a specific subdivision of section 667.61 is one of several ways to provide notice to a defendant. (*People v. Mancebo*, *supra*, 27 Cal.4th at p. 754.) Alternatively, adequate notice can also be conveyed by a factual description of the qualifying statutory circumstances and a general reference to section 667.61 without any subdivision citations. (*Ibid.*)

Here, by citing to the One Strike law and alleging the factual predicates needed to impose sentence under section 667.61, subdivision (j)(2), the information provided sufficient notice to defendant.

### III. We Accept the Attorney General's Concession the Matter Must be Remanded for the Trial Court to Recite Fines and Fees and Create an Amended Abstract of Judgment

Defendant contends the matter must be remanded for the court to recite fines and fees on the record. The Attorney General concedes the matter must be remanded.

#### A. *Additional Facts*

At sentencing, the court stated:

"[Defense counsel], as to the fines and fees listed in the probation officer's report, do you stipulate to each of those without them being read into the record?"

Counsel agreed to stipulate, after which the court said, "I'll order each of the fines and fees that are listed on each count in the probation officer's report." Moreover, not all the fines and fees listed in the probation report are included on the abstract of judgment.

#### B. *Concession*

In appellate briefing, the Attorney General disclaims any objection to remand for an oral recitation of fines and fees in the probation report "and/or" amending the abstract of judgment accordingly. We accept the concession.

13.

## DISPOSITION

The matter is remanded for the trial court to pronounce judgment as to the individual fines and fees listed in the probation report and imposed on defendant. The trial court shall prepare and forward to all appropriate parties a certified copy of an amended abstract of judgment referencing said fines and fees. In all other respects, the judgment is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.

14.